UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ISRAEL ESPARZA ADAME,<br>a/k/a "Gordo,"<br><br>Defendant. | 4:18-CR-40117-05-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Israel Esparza Adame, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 247. Plaintiff, the United States of America, opposes the motion. Docket 273. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On June 6, 2019, Adame pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 144; Docket 167. On September 9, 2019, the court sentenced Adame to 120 months in custody and 5 years of supervised release. Docket 210 at 2; Docket 212 at 2-3. His sentence was later reduced to 60 months in custody followed by 5 years of supervised release. Docket 252 at 2-3.

Adame is incarcerated at Federal Correctional Institution (FCI) Lompoc in Lompoc, California. Docket 256 at 111. As of December 7, 2020, there are currently 2 active COVID-19 cases among FCI Lompoc's inmates and staff, 2 deaths from COVID-19, and 714 inmates and staff have recovered from COVID-19. *See BOP: COVID-19 Update*, Fed. Bureau of Prisons,

https://www.bop.gov/coronavirus/ (last visited on Dec. 7, 2020).

Adame is 27 years old. Docket 256 at 1. His chronic medical conditions include asthma, obesity, and anxiety. Docket 247 at 4; Docket 264 at 8. As of August 3, 2020, Adame weighed 222 pounds and is 68 inches tall. Docket 256 at 24, 57. Based on his weight and height, his body mass index (BMI) is a 33.8. *See* Adult BMI Calculator, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi _calculator.html (last visited on Nov. 30, 2020).

On June 11, 2020, Adame completed an Inmate Request to Staff form. Docket 247-1 at 1-2. Adame requested that he be considered for compassionate release due to COVID-19. *Id.* His request was forwarded to the warden the following day. *Id.* On August 25, 2020, Adame filed a pro se motion with the court for relief under the First Step Act. Docket 247. Adame's counsel subsequently filed a supplement to his pro se motion. Docket 264.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a)

sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Adame argues that the risks posed by the COVID-19 pandemic together with his adverse health conditions satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Docket 247 at 2-4; Docket 264 at 3-5, 12-13. Adame requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.*

**I.     Administrative Exhaustion**

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Adame first submitted a request for compassionate release on June 11,

3

2020. His request was forwarded to the warden on June 12, 2020. Thus, the 30-day period expired, at the latest, on July 12, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Adame's motion is ripe for review on the merits.

## II.     Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing

Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL

5

4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Adame has failed to show that his medical conditions rise to extraordinary and compelling circumstances.

Adame contends that his circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 264 at 2-3. Adame argues that his health conditions—asthma, obesity, and anxiety—put him at high-risk of severe illness if he contracts COVID-19. Docket 247 at 4; Docket 264 at 8.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), smoking, heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Nov. 2, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *may* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, liver disease, overweight, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Adame's medical conditions include obesity, asthma, anxiety, and a positive case of COVID-19 (now recovered). Docket 256 at 8. The CDC has identified that people who are obese (a BMI of 30 or higher) are at an increased risk of severe illness from COVID-19. With a BMI of 33.8, Adame is obese. But "the fact that [Adame] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of his sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); *see also United States v. McAbee*, No. 4:14-CR-40027-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); *United States v. Saenz*, No. 3:10-CR-30027-RAL, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons).

Adame's asthma is listed as a medical condition that might increase the risk of severe illness from COVID-19. His medical history shows that he is prescribed three inhalers for his asthma. Docket 256 at 94-96. During his time in custody, Adame's asthma symptoms have varied. *Id.* at 51, 62, 66, 71, 75; *see United States v. Muhlenhardt*, 2020 WL 4697112, at *4 (D. Minn. Aug. 13, 2020) ("[D]espite the risk [the defendant's] asthma can present, the Court agrees with the findings of several courts that this risk alone is insufficient to warrant release."); *United States v. Slone*, 2020 WL 3542196, at *6 (E.D. Pa. June 30, 2020) ("[A]n incarcerated person arguing extraordinary and

7

compelling reasons based on asthma which is not moderate to severe is not entitled to compassionate release.").

Adame's other medical condition—anxiety—is not listed as a medical condition that might increase or increase the risk of severe illness from COVID-19. Overall, Adame has not identified how his medical conditions prevent him from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances.

Also, on May 7, 2020, Adame tested positive for COVID-19. Docket 256 at 97. He presented with mild to moderate symptoms like shortness of breath, body aches, altered taste and smell, and cough, but he did not have a fever. *Id.* at 79, 82-83. He was prescribed medication to control his symptoms. *Id.* After he recovered from COVID-19, Adame was also provided with an additional inhaler to assist his breathing. *Id.* at 71. BOP medical providers continue to assess Adame's asthma and residual COVID-19 symptoms. *See id.* at 51-52, 62-64, 66-69, 71. Thus, even though Adame has medical conditions that theoretically put him at a higher risk for severe illness from COVID-19, that has not been the case as of yet. According to the medical records provided by the Bureau of Prisons, his COVID-19 diagnosis is listed as "resolved." *Id.* at 8. The court finds that Adame's circumstances do not clear the high bar necessary to warrant a sentence reduction under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

The court believes that Adame's medical conditions are appropriately managed at FCI Lompoc, that the facility is engaged in strenuous efforts to

protect inmates against the spread of COVID-19, that it adequately treated inmates who contracted COVID-19, and that it will continue to do so. Although the court in no way underestimates Adame's health conditions, such ailments, coupled with the present conditions at FCI Lompoc, do not establish extraordinary and compelling reasons justifying his early release.

Even assuming Adame's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Adame pleaded guilty to conspiracy to distribute of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 144; Docket 167. Adame maintained an active role within the conspiracy. Docket 197 ¶ 30. Adame utilized the postal service to distribute large quantities of methamphetamine. *Id.* ¶¶ 19-20. Approximately 108,730 kilograms of methamphetamine were attributed to the defendant. *Id.* ¶ 31. His offense level was a 33 and he was in criminal history category I. *Id.* ¶¶ 45, 49. The guideline range for his sentence was 135-168 months in custody. *Id.* ¶ 69. The mandatory minimum sentence for the offense was 120 months in custody. *Id.* ¶ 65. When originally sentencing Adame, the court sentenced him to the mandatory minimum of 120 months in custody. Docket 212 at 2. Recently, the court reduced Adame's sentence. Docket 252. Adame's current sentence of 60 months is already less than the offense's mandatory minimum of 120 months. As of August 26, 2020, Adame has served 14 months of his now reduced 60-month sentence. Therefore, the court finds that Adame's sentence of 60 months in custody with 5 years of supervised release continues to be

9

appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Adame has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 229) is denied.

Dated December 7, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE